JASON G.F. WONG  2097-0
Attorney At Law
A Limitied Liability Company
1001 Bishop Street, Suite 988
Honolulu, Hawai`i  96813
jwong@jasonwonglaw.com
Telephone: (808) 523-1788
Facsimile: (808) 523-1789

Attorney for Defendant
Cuzco Development U.S.A., LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EAST WEST BANK, a California commercial bank,<br><br>             Plaintiff,<br><br>        vs.<br><br>CUZCO DEVELOPMENT U.S.A., LLC, a Hawai'i limited liability company; GUNIL KIM; DOO SUP BYUN; CITY AND COUNTY OF HONOLULU, STATE OF HAWAII; SOO KYUNG YANG; JCCHO HAWAII LLC, a Hawai'i limited liability company; GEORGE W. VAN BUREN; JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; DOE ENTITIES 1-10; DOE GOVERNMENTAL UNITS 1-10;<br><br>             Defendants. | 1:16-cv-00022-LEK-BMK<br>(Foreclosure Action)<br><br>**DEFENDANT CUZCO DEVELOPMENT USA, LLC.'S MEMORANDUM IN OPPOSITION TO MOTION FOR APPOINTMENT OF RECEIVER; DECLARATION OF DONG WOO LEE; EXHIBITS "A" TO "O"; DECLARATION OF KAY NAKANO; EXHIBITS "P" TO "S"; CERTIFICATE OF SERVICE**<br><br>**Hearing:**<br><br>Date:  February 23, 2016<br>Time:  10:00 a.m.<br>Judge: Magistrate Barry M. Kurren |

**TABLE OF CONTENTS**

I.   INTRODUCTION AND SUMMARY……………………………………… 1

II.  LEGAL STANDARD……………………………………………………. 2

III. DISCUSSION……………………………………………………………. 3

    A.   Threshold Issues……………………………………………………. 3

    B.   Plaintiff Makes No Showing Of Inadequate Security…………………. 4

    C.   There Is No Waste Of The Property……………………………………. 6

    D.   The Management Dispute Is Over…………………………………….. 7

    E.   The Allegation About Funds Held By Van Buren
        Cannot Be A Basis For Appointment Of A Receiver…………………….. 9

    F.   Appointment Of A Receiver Will Prejudice Cuzco USA……………….. 10

IV.  CONCLUSION………………………………………………………………….. 11

# TABLE OF AUTHORITIES

**RULES**

Fed. R. Civ. P. 65……………………………………………………………………  3

Fed. R. Civ. P. 66 ……………………………………………………………………  2

**CASES**

Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.,
  999 F.2d 314, 316 (8th Cir. Mo. 1993). ………………………………………..  2

Canada Life Assur. Co. v. LaPeter,
  563 F.3d 837, 844 (9th Cir. Idaho 2009)……………………………………….  2,4,5

In re Mexico City Aircrash,
  708 F.2d 400, 404 n.4 (9th Cir. 1983).  ………………………………………..  3

Midwest Sav. Ass'n v. Riversbend Assocs. Partnership,
  724 F. Supp. 661 (D. Minn. 1989)……………………………………………..  2

New York Life Ins. Co. v. Watt West Inv. Corp.,
  755 F. Supp. 287, 289-92 (E.D. Cal. 1991)…………………………………….  2,4,5

Sterling Sav. Bank v. Citadel Dev. Co.,
  656 F. Supp. 2d 1248, 1261 (D. Or. 2009)  ……………………………………  2,5

**OTHER**

12 C. Wright & A. Miller, Federal Practice and Procedure § 2983. ……………… 2

13-66 Moore's Federal Practice - Civil § 66.04 …………………………………. 11

**DEFENDANT CUZCO DEVELOPMENT USA, LLC.'S MEMORANDUM IN OPPOSITION TO MOTION FOR APPOINTMENT OF RECEIVER**

COMES NOW Defendant Cuzco Development USA, LLC ("Cuzco USA"), through counsel, and hereby submits its Memorandum in Opposition to Plaintiff East West Bank's Motion for Appointment of Receiver.

I. **INTRODUCTION AND SUMMARY**

Plaintiff's Motion for Appointment of Receiver should be denied because a receiver is unnecessary, and will only serve to increase expenses and make it more difficult for Defendant Cuzco USA to refinance the Subject Property. The Motion should be denied for the following reasons:

A. Appointing a receiver is considered an extraordinary remedy, which is only justified in extreme situations. This is not such a situation.
B. Plaintiff is fully secured.
C. The value of the Property exceeds the loan amount by $10,000,000 to $25,000,000 or more.
D. Unpaid property taxes for 2014 are being repaid under an installment plan with the city, and a similar installment plan for taxes for 2015 is anticipated.
E. The dispute over control of Cuzco USA's parent company has been concluded in favor of the current management.
F. During the control dispute, the current management of Cuzco USA took action to protect the Property, which included the appointment of a receiver by the Circuit Court of the First Circuit, State of Hawaii, and freezing Cuzco USA's DCCA records.
G. The Property is currently managed by a professional property manager, who has managed the Property since July 2008 (except for a one-year period).
H. There is no evidence of waste, and Cuzco USA has significant equity in the Property and has a vested interest in preserving the Property. There is no fraud by the current and undisputed management of Cuzco USA, who took affirmative action to preserve and protect the subject Property.
I. The appointment of a receiver will be a cloud on the Property, and will adversely affect current efforts to refinance.

J. Rents currently held by the state court-receiver are subject to a claims process controlled by the state court.

K. The Motion to Appoint Receiver is premature.

## II. **LEGAL STANDARD**

"Under federal law, appointing a "receiver is an extraordinary equitable remedy," which should be applied with caution." Canada Life Assur. Co. v. LaPeter, 563 F.3d 837, 844 (9th Cir. Idaho 2009), quoting Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc., 999 F.2d 314, 316 (8th Cir. Mo. 1993).

"The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles. See Fed. R. Civ. P. 66 and Advisory Committee's Note; New York Life Ins. Co. v. Watt West Inv. Corp., 755 F. Supp. 287, 289-92 (E.D. Cal. 1991); Midwest Sav. Ass'n v. Riversbend Assocs. Partnership, 724 F. Supp. 661 (D. Minn. 1989); 12 C. Wright & A. Miller, Federal Practice and Procedure § 2983. A receiver is an extraordinary equitable remedy that is only justified in extreme situations." Aviation Supply Corp., 999 F.2d at 316.

> [F]ederal courts consider a variety of factors in making this determination, including, for example: (1) "whether [the party] seeking the appointment has a valid claim"; (2) "whether there is fraudulent conduct or the probability of fraudulent conduct," by the defendant; (3) whether the property is in imminent danger of "being lost, concealed, injured, diminished in value, or squandered"; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) "the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property"; and, (7) "whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership."

LaPeter, 563 at 844 (citations omitted).

"The Ninth Circuit has recognized a "distinction … between a receiver with the power to collect rents … and a receiver with the additional power to manage the mortgaged property." …. This difference is material, because the grant of managerial powers, unlike the authority to collect rents, effectively divests the property owner of rights traditionally exercised by an owner." Sterling Sav. Bank v. Citadel Dev. Co., 656 F. Supp. 2d 1248, 1261 (D. Or. 2009) (citation omitted).

### III.  DISCUSSION

#### A.  Threshold Issues

There are numerous threshold issues that should be addressed as Plaintiff rushes to appoint a receiver.

First, Plaintiff has not yet served all the parties. Plaintiff therefore seeks a receiver without allowing parties affected by the request to be heard on the issue.[1] As will be discussed below, Plaintiff is over secured in the amount of millions of dollars, and there is no urgency that requires an immediate hearing on the Motion to Appoint Receiver.

Second, Plaintiff has not properly pled the basis for jurisdiction over its Complaint. "The essential elements of diversity jurisdiction, including the diverse residence of all parties, must be affirmatively alleged in the pleadings." In re Mexico City Aircrash, 708 F.2d 400, 404 n.4 (9th Cir. 1983). Specifically, two of the defendants are limited liability companies, but Plaintiff has not alleged the citizenship of the members. The sole member of Cuzco USA is Cuzco Korea. However, JCCHO is also a limited liability company, and there is no allegation regarding its membership.

Third, Defendant Soo Kyung Yang has alleged in a verified Second Amended Complaint in her state court action that she "is a resident of Los Angeles, California."[2] It is unclear how this assertion of residency affects the jurisdictional basis of Plaintiff's Complaint.

Finally, Plaintiff seeks a receivership while the Receiver appointed by the State Court is in the midst of winding up his receivership. See discussion, infra. Plaintiff asks this court to interfere in the state proceeding, and disregard principles of comity, by commanding the state-appointed receiver to deliver funds to Plaintiff or a federal receiver. It is not even clear the federal court has jurisdiction over funds currently part of the receiver's estate in state court. Plaintiff's rush to create a receivership when state proceedings are being wound up is inappropriate.

---

[1] This is the equivalent of seeking a temporary restraining order which would not be granted absent immediate and irreparable loss, a standard that cannot be met here. See FRCP Rule 65.
[2] Judicial notice is requested of the Verified Second Amended Complaint in Soo Kyung Yang v. Cuzco Development USA, LLC, et al, Civil No. 15-1-0378-03 (JHC), Circuit Court of the First Circuit, State of Hawaii. Plaintiff cites to this action in its Motion for Receiver.

3

**B.     Plaintiff Makes No Showing Of Inadequate Security.**

Plaintiff argues that "a receiver should be appointed to preserve the value of the Mortgage Property[.]"  Plaintiff's Memorandum in Support of Motion for Receiver at 15. Plaintiff further claims "[t]he Mortgage Property is at imminent risk of substantial decline in value and risk of loss[.]" Id.

Plaintiff gives the incorrect impression that it is at risk of becoming under secured if a receiver is not immediately appointed.  Plaintiff is, in fact, over secured by a magnitude of many millions of dollars.  Plaintiff's attempts to create a sense of urgency should be exposed for what it is: hyperbole.

The adequacy of security is the most important factor here.  "Federal courts contemplating the appointment of a receiver properly consider a number of factors. **Most important among the factors are the adequacy of the security and the financial position of the mortgagor**." New York Life Ins. Co. v. Watt West Inv. Corp., 755 F. Supp. 287, 292 (E.D. Cal. 1991) (emphasis added).  "**[F]oremost among [the factors is] whether the property was of insufficient value to insure payment**, and whether the defendant was of doubtful financial standing."  LaPeter, 563 F.3d at 844 (emphasis added).

According to Plaintiff, the outstanding loan balance as of December 14, 2015 is $24,180,499.21.  See Memorandum in Support of Motion for Receiver at 7.

The Subject Property is worth far more than the $24 million claimed under the loan. Indeed, according to objective evidence, Plaintiff is "oversecured" by anywhere from $10,000,000.00 on the low side to $25,000,000 or more, on the high side.

According to City and County real property tax assessments, the value of the Subject Property is approximately $35 million.  See Declaration of Dong Woo Lee at par. 44; Exhibit N.

Furthermore, Cuzco USA received on November 15, 2015, a bona fide offer for the Keeaumoku Property in excess of $41 million.  See Lee Declaration at par. 45; Exhibit O.

Mr. Dong Woo Lee, the manager of Cuzco USA, estimates the market value of the Keeaumoku Property is well in excess of $50,000,000.00.  See Lee Declaration at par. 46.

In fact, the Property was purchased in 2007 for $49,000,000.00.  See "Koreans by Hawaii land parcel for $49M," Rick Daysog, Honolulu Advertiser.[3]

---

[3] http://the.honoluluadvertiser.com/article/2007/Dec/21/bz/hawaii712210337.html

Plaintiff claims a first priority mortgage interest on the properties, and is therefore fully secured.

The adequacy of the collateral should result in denial of the Motion for Receiver. In New York Life Ins. Co. v. Watt West Inv. Corp., 755 F. Supp. 287 (E.D. Cal. 1991), for example, a receiver was appointed where the creditor was under secured and the debtor's financial strength was in question. See Id. ("Plaintiff has made a sufficient showing that the adequacy of the security is substantially doubtful and that the financial strength of the defendants is at least doubtful. The court notes particularly paragraph eight of the Kaercher declaration regarding the statement of Clark Wynn, Chief Financial Officer of the Cook Company, that the Cook Company is experiencing financial difficulty. In addition, plaintiff has shown that the value of the Property is approximately $ 910,000.00 less than the debt owed to New York Life.").

Here, by contrast, the Plaintiff is fully secured.

Plaintiff's Motion for Receiver is filled with references to "impairment" and "diminution" and other conclusive catchwords, but is devoid of actual facts and evidence to support it. Plaintiff claims that "[a]ny further diminution in the value of Plaintiff's collateral would place Plaintiff in a position where legal remedies would be inadequate, due to the impairment of its collateral. " Plaintiff's Memorandum in Support at 21-22.

The presence of a receiver provision in the Mortgage documents is not determinative, and cannot supplant the Court's discretion in considering the appropriateness of the relief sought. See Sterling Sav. Bank v. Citadel Dev. Co., 656 F. Supp. 2d 1248, 1251 (D. Or. 2009) ("The court concludes that consent to a receiver is not dispositive of the issue and that Sterling has not produced sufficient evidence of the receivership factors outlined in Canada Life Assurance Co. v. LaPeter, 563 F.3d 837, 844 (9th Cir. 2009). Therefore, Sterling's motion to appoint a receiver should be denied at this time.").

Plaintiff's concern about unpaid real property taxes is misplaced. Historically, East West Bank has been aware that the real property taxes were in arrears and being paid in installments since approximately the end of 2010. See Declaration of Kay Nakano at par. 14. In October of 2015, shortly after TH Realty was reinstated as the property manager, Ms. Nakano contacted the City & County of Honolulu to inquire about an installment plan for the real property taxes. Id. at par. 15. In response, the City proposed a payment plan for the 2014 taxes. See Id. at par. 16 and Exhibit Q. On December 30, 2015, Ms. Nakano on behalf of Cuzco USA

5

agreed to the City's 6-month installment plan.  See Id. at par. 17 and Exhibit R.  **To date, Cuzco USA has made all payments currently due to the City & County of Honolulu under the installment plan.**  Id.

Once the arrears in the 2014 real property taxes are paid, Ms. Nakano, on behalf of Cuzco USA, plans on negotiating a monthly installment payment plan with the City and County of Honolulu to pay the 2015 arrears.  See Id. at par. 19.  The real property taxes for the second half of 2015 will not be due until February 22, 2016.  Id. at par. 18.

Ms. Nakano estimates the total real property taxes currently in "arrears" is around $446,581.00.  Id. at par. 13.  **Thus, even without considering the current and planned installment plans, the equity in the Property is still over $9,000,000 at the low end.**

### C.     There Is No Waste Of The Property

The claims that Cuzco USA is causing waste are not only unfounded, they are implausible.  Cuzco USA has millions of dollars of equity in the Property and a vested interest in preserving, protecting, and even improving the Property.  In fact, given the degree to which Plaintiff is over secured, Cuzco USA's interest in protecting the value of the Property is arguably stronger than Plaintiff's.

There is no inadequacy of the security, and there is no waste.

The Property, until recently, was under the control of a receiver appointed by the Hawaii Circuit Court.  See Exhibit 5 to Motion for Receiver.  In addition, the Property is managed by its longstanding property manager, TH Realty and Kay Nakano.

Specifically, from approximately July 2008 to August 31, 2014, Kay Nakano acted, on behalf of TH Realty, Inc., as property manager for Cuzco USA for the Keeaumoku Property.  See Declaration of Kay Nakano at par. 2.  Ms. Nakano and TH Realty were the property managers in 2011, when Plaintiff and Defendant executed their 2011 refinancing.  See Id. at par. 4, 5.  During the period from 2011 to August 31, 2014, Plaintiff expressed no complaint or objection to Ms. Nakano/TH Realty management of the Property.  See Id. at par. 5.

Kay Nakano and TH Realty managed the Property until August 31 2014, when they were ousted by the unlawful managers.  TH Realty was rehired in October 2015, and TH Realty and Ms. Nakano resumed duties as property manager for the Keeaumoku Property.  Id. at par. 11.

The rents received by TH Realty from tenants are deposited in Cuzco USA's bank account in the State of Hawaii. See Id. at par. 20. The rents will be used for ordinary operating expenses, debt service, and capital expenditures for the Keeaumoku Property. Id. The property manager has not received from Cuzco USA's Manager Dong Woo Lee any instructions or directions to transfer any of these funds to Korea. Id.

Mr. Dong Wong Lee, who is also a representative of Cuzco Korea, confirms that he has directed TH Realty, Inc., acting as property manager for the Keeaumoku Property, to deposit the rents it collects from tenants into Cuzco USA's bank account in the State of Hawaii:

> As manager of Cuzco USA, I have directed TH Realty, Inc., acting as property manager for the Keeaumoku Property, to deposit the rents it collects from tenants into Cuzco USA's bank account in the State of Hawaii. I have directed that these rents be used for ordinary operating expenses, debt service, and capital expenditures for the Keeaumoku Property. I have not given any instructions or directions to TH Realty, Inc. to transfer any of these funds to Korea.

Lee Declaration at par. 48.

### D.  **The Management Dispute Is Over**

Plaintiff seeks to take advantage of an prior ownership/control dispute that has been resolved in favor of Cuzco USA to justify appointment of a receiver. Ironically, the action taken by Cuzco USA but complained of by Plaintiff, protected and preserved the Property and rents from improper action taken by unauthorized third parties.

Sometime on or about July 31, 2014, unauthorized third parties illegally caused to be issued 48,000 bogus new shares for Cuzco Korea to unauthorized shareholders. Declaration of Don Woo Lee at par. 15 and 16. The plan of the illegal shareholders was to take control of Cuzco Korea and Cuzco USA. See Id. at par. 13.

On or about January 21, 2015, Ms. Soo Kyung Yang—an owner of Cuzco Korea and one of the defendants herein—filed a lawsuit in the Seoul Central District Court for the nullification of the illegal 48,000 shares of bogus stock. Id. at par. 22.

On March 4, 2015, Ms. Yang filed a derivative Complaint in Hawaii State Court to prevent unauthorized persons from illegally selling Cuzco USA's Keeaumoku Property, and to prevent their unlawful diversion of the rents. Id. at 23. The action was filed to protect Cuzco USA, and its assets, including the Subject Property and its rents.

On July 24, 2015, in the Korea Lawsuit, the Seoul Central District Court issued a Judgment in favor of Ms. Yang and ruled: "the issuance of [48,000] new shares in the present case was not based on grounds provided in Article 418(2) and Defendant's [Cuzco Korea] articles of incorporation. Rather, the new shares were issued to third parties in an attempt to deprive the existing shareholders of their control rights, which violates the abovementioned provision of the Commercial Act and the Defendant's [Cuzco Korea] articles of incorporation and also infringes Plaintiffs' preemptive rights." Id. at par. 26.

A Korean Appeals Court rejected an appeal of the Seoul Central District Court Judgment. Pursuant to that certain Judgment on Appeal entered on December 18, 2015 in the Korea Lawsuit, the Seoul High Court, 18th Civil Division affirmed the Seoul Central District Court's Judgment which invalidated the bogus shares of stock in Cuzco Korea. Id. at par. 41.[4]

On February 4, 2016, the Hawaii Circuit Court entered a Stipulated Order for Dismissal of All Claims and Parties and for Discharge of Receiver. Id. at par. 43. The Receiver had been appointed to ensure that the illegal shareholders could not obtain control of Cuzco USA's Property and funds.

As stated in the Stipulation appointing the State Court receiver:

> [I]n the interests of justice, avoiding the threat of unlawful sale of the Property, losses of rents and income, dissipation or loss of valuable property rights, and delay, and to avoid further litigation expense, the Parties below hereby desire to enter into a stipulation to appoint a receiver for the Property to safeguard, administer, and control the Property during the pendency of this lawsuit.

See Exhibit 5 to Motion for Receiver, at p. 5. The Stipulation appointing the receiver benefitted East West Bank, as it ensured that the Subject Property and funds were preserved. It contained the following provision protecting the Property and the estate:

> The Receiver shall maintain control and possession of all of the Accounts, wheresoever situated, and shall take all actions to terminate any further collection of Rents for the Property purportedly under the authority of Hyung Soo Jang. Such proceeds are a portion of the Estate, and may be used, as limited by this Order, to pay for such expenses as are necessary or appropriate for the care, preservation and maintenance of the Estate, including the continued payment under that certain Promissory Note dated March 15, 2011, between Cuzco USA as

---

[4] The ownership dispute is described in more detail in the Declaration of Dong Woo Lee and its exhibits.

8

borrower, and East West Bank as lender in the original principal amount of $25,400,000.00.

Id. at p. 8. (emphasis added). The Receiver was also authorized to retain TH Realty and Ms. Nakano to manage and preserve the property. Id. at p. 11.

Cuzco USA also sought to protect the company and its assets/Property by requesting a freeze of Cuzco USA's records at the State of Hawaii Department of Commerce and Consumer Affairs. See Lee Declaration at par. 39 ("Due to [the] illegal action in filing with the DCCA a fraudulent and unauthorized change of manager form for Cuzco USA, and to protect Cuzco USA from … fraudulent activity, I wrote a letter dated October 1, 2015 to the DCCA requesting a "freeze" on the records for Cuzco USA. By letter dated October 6, 2015, the DCCA confirmed my request was granted.").

### E. The Allegation About Funds Held By Van Buren Cannot Be A Basis For Appointment Of A Receiver.

Plaintiff attempts to use the funds held by the State Court Receiver, Mr. Van Buren, as an additional reason why a federal receiver should be appointed. Plaintiff's arguments are misplaced: Van Buren was appointed to protect the rents, and the funds he collected will only be disbursed pursuant to a procedure adopted by the State court.

Plaintiff argues "Defendant Van Buren has been collecting rents from tenants of the Property since the date of his appointment as receiver and has held or is presently holding approximately $600,000, which funds are the assigned rents and cash collateral of Plaintiff under the Business Loan Agreement, Promissory Note, Mortgage (with assignment of rents), and other Loan Documents." Memorandum in Support at 8.

There is no dispute that Van Buren currently holds funds pursuant to his role as receiver appointed by the Circuit Court of the First Circuit, State of Hawaii. **Van Buren was appointed to protect the Property and rents**. Presently, there is a procedure in place, in State Court, for the winding up of the receivership and the disposition of funds held by the Receiver. The procedure, which is contained in a Stipulation and Order, provides as follows:

> (a) From and after the date of the entry of this Stipulated Order for Dismissal, the Receiver: (i) shall have no further rights or duties to act except as specified hereinafter, (ii) shall not collect monies (without regard to pro-rations), (iii) **shall retain possession of all monies collected by the Receiver to the date of the**

**entry of the Stipulated Order for Dismissal ("Remaining Funds"),** and (iv) shall be allowed to pay all expenses incurred in the ordinary course of business from the Remaining Funds.

….

(c) **The Receiver shall publish one notice in the Honolulu Star Advertiser stating that all claimants who may have claims against the Receiver or the Receivership Estate** are hereby notified that they must present their claims against the Receiver or the Receivership Estate, in writing by certified mail, to the Receiver ….

(d) **If any claim against the Receiver or the Receivership Estate is received, the Court shall retain jurisdiction to determine the claim against the Receiver or the Receivership Estate** and after such determination the Receiver shall be discharged and all claims against the Receiver and the Receivership Estate shall be forever barred. If no claim against the Receiver or the Receivership Estate is received, the Receiver shall file a statement so stating and all claims against the Receiver and the Receivership Estate shall be forever barred.

(e) After the expiration of the Notice period, the Receiver shall turn over all Remaining Funds to Cuzco Development U.S.A., LLC c/o its Manager Dong Woo Lee, or his nominee.

See Exhibit M (Stipulation and Order re Receiver) (emphasis added).

Plaintiff claims that "If the rents held by Defendant Van Buren are turned over to Cuzco Development, the funds may be transferred out of Hawai'i and the United States." Id. at 22. There is no evidence that such funds will be sent to Korea, and Plaintiff can make a claim in against the Receiver. Plaintiff cannot fail to follow the State Court's claim process, and then demand that a federal court pre-empt the State court procedures.

### F. Appointment Of A Receiver Will Prejudice Cuzco USA

The appointment of a receiver will prejudice the borrower Cuzco USA's rights by: (i) unfairly depriving the Cuzco USA of its possessory rights pending the outcome of the foreclosure case, (ii) imposing unnecessary and undue cost and expense on Cuzco USA to fund the administration of the receivership, and (ii) impairing Cuzco USA's right and ability to refinance the Property with another lender. See Lee Declaration at par. 49.

Cuzco USA is currently pursuing refinancing of the Keeaumoku Property and expects to obtain refinancing in the next few months. See Lee Declaration at par. 50.

Given that Plaintiff is substantially oversecured, the cost of a receivership will effectively be borne by Cuzco USA. Having an expensive receiver, who will likely retain his own expensive lawyer, accountants, and other professionals, is unnecessary. Plaintiff is suing to foreclose, not operate a commercial property. The Property is merely security for payment, and Plaintiff is fully secured. Defendant and its property manager are fully capable of managing the Property at this time. Again, Defendant is seeking to refinance, at which time Plaintiff's foreclosure action will be dismissed.

The prejudice to Cuzco USA is great: it is the one seeking refinancing, and it is the one whose equity is being depleted. The harm to fully-secured Plaintiff is not irreparable, and can be addressed by its claims on the loan and for foreclosure . As one treatise has observed:

> The appointment of a receiver is not easily obtained. Indeed, the appointment of a receiver is considered by the courts to be an extraordinary equitable remedy. Thus, a receiver will be appointed only in those situations when the circumstances are extreme and the property interests of the parties are clearly at risk. While the appointment of a receiver is not a "drastic" remedy under federal law, courts sometimes use this term to describe the extraordinary circumstances that must surround the appointment of a receiver. **In this regard, the requisite showing might be likened to the burden to demonstrate some irreparable harm** and a likelihood of success on the merits in order to obtain injunctive relief, which sometimes is requested along with the request for the order appointing a receiver.

13-66 Moore's Federal Practice - Civil § 66.04 (footnotes omitted).

11888

## IV.  CONCLUSION

Based on the foregoing, the Motion for Receiver should be denied.

Dated: Honolulu, Hawaii, February 12, 2016

/s/ Jason G.F. Wong
Jason G.F. Wong
Attorney for Defendant
CUZCO DEVELOPMENT U.S.A., LLC